ELECTRONIC CITATION:  2002 FED App. 0002P (6th Cir.)
File Name:  02b0002p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:  DEBORAH E. COWAN, | ) |
| Debtor. | ) |
| _____ | ) |
| E. HANLIN  BAVELY, TRUSTEE, | ) |
| Plaintiff-Appellee, | ) |
| v. | )  No. 01-8011 |
| HUNTINGTON NATIONAL BANK, et al., | ) |
| Defendants-Appellees. | ) |
| FIFTH THIRD MORTGAGE COMPANY, | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Southern District of Ohio, Western Division at Cincinnati.
Case No. 99-13168; Adversary No. 99-1112

Argued: September 5, 2001

Decided and Filed:  February 12, 2002

Before: COOK, MORGENSTERN-CLARREN, and RHODES,
Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** David A. Freeburg, McFADDEN & ASSOCIATES CO., L.P.A., Cleveland, Ohio, for Appellant.  E. Hanlin Bavely, Cincinnati, Ohio, Stephen C. Crowe, Milford, Ohio, for Appellees.  **ON BRIEF:**  David A. Freeburg, McFADDEN & ASSOCIATES CO., L.P.A., Cleveland, Ohio, for Appellant.  E. Hanlin Bavely, Cincinnati, Ohio, Stephen C. Crowe, Milford, Ohio, Elizabeth G. Weber, DETERS, BENZINGER & LaVELLE, P.S.C., Covington, Kentucky, for Appellees.

_____

## OPINION

_____

PAT E. MORGENSTERN-CLARREN, Bankruptcy Appellate Panel Judge. This case presents a variation on the now-common fact pattern in individual Chapter 7 bankruptcy cases filed in Ohio where a Chapter 7 Trustee attempts to set aside a recorded mortgage on real property on the ground that the mortgage was not properly executed under state law, leaving the mortgage holder's interest unperfected. The reported cases to date have dealt with traditional land, which is one of two recording systems in Ohio, the other being registered land. The dispute in this case centers on registered land, and the manner in which interests in such land are transferred and perfected.

The Chapter 7 Trustee filed a complaint challenging a mortgage held by Fifth Third Mortgage Company on the Debtor's registered land. The bankruptcy court granted summary judgment in favor of the Trustee avoiding the mortgage under Bankruptcy Code § 544(a)(3) because it had not been noted on the land title as required by Ohio's registered land law and finding that Fifth Third was not entitled to a lien under either Bankruptcy Code § 550(e) or the doctrine of equitable subrogation as against the Trustee or other parties who had perfected their interests. Fifth Third appealed that judgment. For the reasons stated below, which differ somewhat from those adopted by the bankruptcy court, the bankruptcy court's decision is **AFFIRMED**.

## I. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel has jurisdiction to decide this appeal under 28 U.S.C. §§ 158(a) and (c). The bankruptcy court's order granting summary judgment is a final, appealable order which is reviewed de novo. *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics Corp.)*, 224 B.R. 27, 29 (B.A.P. 6th Cir. 1998) (citations omitted).

## II. ISSUE

2

The issue is whether Fifth Third holds a perfected first mortgage on the registered property, or is otherwise entitled to be in a first position.

## III. FACTS

When the Debtor Deborah Cowan filed her Chapter 7 case in 1999, she owned two separate parcels of real property in Clermont County, Ohio. Although the two parcels are contiguous, one parcel was registered land and the other was traditional, non-registered land. The Debtor's house straddled the two parcels.

In 1993, the Debtor borrowed funds from Fifth Third Mortgage Company[1] and in turn granted Fifth Third a mortgage on the two parcels. The Debtor used some of the loan proceeds to pay off existing liens on the property. Fifth Third properly recorded its mortgage on the traditional land with the county recorder's office, but did not physically note the mortgage on the registered parcel's certificate of title. There is no dispute over Fifth Third's interest in the traditional land.

In 1994 and 1995, respectively, the Debtor gave additional mortgages on the two parcels to Huntington National Bank and Richard Godar, who properly perfected their interests under both the traditional and registered land systems. Clermont County withdrew from the land registration system in 1998, as permitted by Ohio law. The Chapter 7 filing followed.[2]

The Trustee filed this adversary proceeding under 11 U.S.C. § 544 to avoid Fifth Third's mortgage as to the registered parcel, only.[3] Both the Trustee and Fifth Third moved for summary judgment.[4] The bankruptcy court granted the Trustee's motion, holding that

---

[1] Fifth Third actually holds the mortgage as the successor by merger to Citfed Mortgage Corporation of America. For ease of reading, no distinction is drawn between the two entities.

[2] The Trustee sold both parcels, with the interests of all parties attaching to the proceeds pending determination of the appropriate distribution.

[3] The Trustee sought relief against other parties which is not at issue here.

[4] The record shows that the parties submitted the motions to the court on what amounted to agreed facts.

3

Fifth Third had not perfected its mortgage on the registered parcel, thus rendering the mortgage avoidable under § 544(a)(3). The court also held that Fifth Third was not entitled to a lien against the property under § 550(e) because Fifth Third, having caused this problem through its own actions, was not a good faith transferee that could invoke that provision. The court also declined to apply the doctrine of equitable subrogation, finding it unavailable as a matter of law against the Trustee and inapplicable based on the facts as against Huntington and Godar.

## IV.  DISCUSSION

### A.  Perfecting a Mortgage under Ohio's Registered Land Laws

Ohio has two different systems for perfecting interests in real property:  the general (or traditional) recording laws and the land registration laws (also referred to as the Torrens System).  If land is governed by the traditional system, a properly executed mortgage must be filed with the appropriate county recorder's office in order to create a perfected interest in the property.  *See* OHIO REV. CODE §§ 5301.23 and 5301.25.  If land falls under the registration system, however, liens and encumbrances must be registered (i.e. noted) on the property's certificate of title, so that anyone looking at the title will have a full understanding of ownership and encumbrances.  *See* OHIO REV. CODE § 5309.48.  *See generally,* OHIO REV. CODE Chapter 5309.  Land registration laws, which are not unique to Ohio, are intended to create an unassailable title, simplify land transfers, and save the cost of repeated title examinations when land is transferred.  ROBERT M. CURRY & JAMES JEFFREY DURHAM, OHIO REAL PROPERTY LAW AND PRACTICE, § 6-20 n. 865 (5th ed. 1996).  Ohio courts interpreting and applying the Ohio Registration of Land Titles Act have held that the purpose of the law:

> is to create an absolute presumption that the register of titles speaks the last word about the title to land, eliminating all "secret liens and hidden equities," and making the language in the register of titles absolute proof of indefeasible title excepting only those encumbrances and claims noted therein. *Curry v. Lybarger* (1937), 133 Ohio St. 55, 11 N.E.2d 873 [10 O.O. 61].  This purpose is evidenced by a series of provisions in the Act.  R.C. 5309.06 states that all lesser estates, vested

4

> or contingent, private easements and other interests, mortgages, liens and charges shall be noted on the original and duplicate certificates of title when the land is registered, except only as provided in R.C. 5309.28.

*Kincaid v. Yount*, 459 N.E.2d 235, 238 (Ohio Ct. App. 1983). *See* OHIO REV. CODE § 5309.01, *et seq.* An owner of registered land, therefore, holds that land free of any mortgage which is not noted on the certificate of title. *See Kincaid,* 459 N.E.2d at 239. *See also* OHIO REV. CODE § 5309.28. Additionally,

> [t]ransferees of registered land are not charged with notice, actual or constructive, of any unregistered claim or interest; knowledge thereof shall not be imputed to the transferee as fraud; and no unregistered claim or interest shall prevail against a registered title taken bona fide for valuable consideration.

*Kincaid,* 459 N.E.2d at 238 (citing OHIO REV. CODE § 5309.34).**[5]** Fifth Third's mortgage was not noted on the certificate of title. Based on the plain language of the statute, Fifth Third does not hold a perfected security interest in the registered parcel and the Trustee, Huntington, and Godar took their interests in that property free of Fifth Third's mortgage. Despite the statute, Fifth Third makes two arguments in support of its position that it does hold a perfected security interest. The first is based on constructive notice. Fifth Third asks the Panel to determine as a matter of Ohio law that a mortgage which includes both registered and traditional land gives the holder a perfected security interest in both kinds of land so long as the mortgage is properly recorded in the traditional system. Fifth Third

---

[5] The statute states that with exceptions not relevant here, a person taking an interest in registered land:

> shall not be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand, or interest . . . [and] [n]o unregistered estate, interest, power, right, claim, contract, or trust shall prevail against the title of a registered owner taken bona fide for valuable consideration or of any person bona fide claiming through or under him.

OHIO REV. CODE § 5309.34 (Anderson 1999).

contends that a bona fide purchaser of the house straddling the two parcels would have to search the traditional land records to see the state of the traditional parcel.  In doing so, the inquirer would see the mortgage on the traditional land and be placed on constructive notice that the mortgagee intended to have a mortgage on the registered land as well.  Under this theory, the purchaser, with actual notice of the mortgage on the traditional parcel and constructive notice of the attempted mortgage on the registered parcel, would then take both parcels subject to the mortgage.

Ohio law does not support this argument.  To the contrary, the statute states that a person taking a transfer or an interest in registered property "shall not be affected with notice, actual or constructive, of any unregistered trust, lien, claim, demand, or interest."  OHIO REV. CODE § 5309.34.  We conclude, therefore, that the doctrine of constructive notice does not apply so as to give Fifth Third a validly recorded mortgage on the registered parcel.

Second, Fifth Third argues that Clermont County's 1998 abolition of land registration gave it additional property rights.  Fifth Third relies on this statute:

> Subject to sections 5310.44 and 5310.47 of the Revised Code, on and after the date of implementation, registered land in a county that has abolished land registration shall be dealt with the same as if it were not registered land, and instruments for its conveyance or encumbrance shall be recorded in the traditional recordation system, not in the land registration system.  Until there has been a conveyance of the entire fee of such land, in preparing the prior instrument reference on each such instrument of conveyance or encumbrance, the certificate of title that pertains to the land shall be identified as the prior instrument.

OHIO REV. CODE § 5310.41 (Anderson 1999).  Fifth Third points to the language in the first sentence that, after abolition, formerly registered land is to be "dealt with the same as if it were not registered land."  Fifth Third posits that when Clermont County abolished land registration, the earlier-existing registration requirement vanished, making the unregistered mortgage a perfected lien because it was recorded in accordance with the surviving traditional land laws.  This sentence does not, however, serve retroactively to undo all the rights established when the registered land system was in effect.  The second sentence

6

makes this clear by stating that the certificate of title will continue to be referred to in future transactions until the entire fee in the registered land has been conveyed.

Other Ohio statutes also show that registered land law did not simply cease to exist after abolition. For example, the county recorder must continue the certificate of title and record it as a muniment of title in the traditional recording system. *See* OHIO REV. CODE § 5310.50. As a corollary, the certificate continues to have conclusive effect as to the conveyances and encumbrances noted on it. OHIO REV. CODE § 5310.42.[6]

This conclusion is further supported by Ohio's rules of statutory interpretation under which a statute is presumed to operate prospectively unless the legislature expressly makes it retrospective. OHIO REV. CODE § 1.48 (Anderson 1999). In this instance, the legislature did not choose to do so.

The Panel concludes that Fifth Third did not hold a perfected mortgage on the registered parcel. The bankruptcy court's decision on this issue is affirmed.

### B. Mortgage Avoidance

Fifth Third also appeals the bankruptcy court's determination that its mortgage is avoidable under § 544(a)(3). The bankruptcy court held that the Trustee could avoid the unregistered mortgage given his status as a bona fide purchaser of registered land without notice. In reaching this result, the bankruptcy court apparently assumed, without deciding, that Fifth Third acquired an interest in the registered parcel through the mortgage even though the mortgage is not noted on the certificate of title. For the reasons that follow,

---

[6] Section 5310.42 provides that:

> A certificate of title that is transcribed or bound in the register of titles on the date of implementation in a county that has abolished land registration has the following effects on and after such date:
>
> (A) Conclusive effect as to conveyances and encumbrances occurring before the date of implementation and noted on the certificate[.]

OHIO REVISED CODE § 5310.42 (Anderson 1999).

7

however, we conclude that the mortgage did not effect a transfer of an interest in the property to Fifth Third.  Consequently, Fifth Third did not hold an interest in the property and the Trustee did not need to avoid that interest under § 544 in order to bring the property into the Chapter 7 estate.  The bankruptcy court's decision is affirmed on that different ground.[7]

"The 'strong arm' clause of the Bankruptcy Code, 11 U.S.C. § 544(a), grants a bankruptcy trustee the power to avoid transfers of property that would be avoidable by certain hypothetical parties." *Simon v. Chase Manhattan Bank (In re Zaptocky)*, 250 F.3d 1020, 1023 (6th Cir. 2001).[8]  The predicate question here is whether the Debtor transferred any interest in the registered land to Fifth Third through the mortgage.  If not, there is no interest for the Trustee to avoid.  *See Craig v. Seymour (In re Crabtree)*, 871 F.2d 36, 38 (6th Cir. 1989) (acknowledging that § 544(a) avoidance is unnecessary where a party has no interest in real property under applicable state law).

Fifth Third argues that, even if it does not hold a perfected mortgage, it still has an unavoidable interest in the property based either on equity or contract.  While Ohio law

---

[7]  After oral argument, the parties were asked to file supplemental briefs on this issue, which was raised in the bankruptcy court.

[8]  Section 544(a)(3) states that:

(a)  The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by –

\*        \*        \*

(3)  a bona fide purchaser of real property . . . from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

does provide Fifth Third with certain rights as against the Debtor based on the mortgage, those rights do not rise to the level of an interest in the property.

We reach this conclusion by again turning to the Ohio Registration of Land Titles Act. Section 5309.92 provides that a:

> [v]oluntary transfer or encumbrance of a registered estate or any interest therein shall be made only as prescribed by sections 5309.02 to 5310.21 of the Revised Code, and by entry on the register of land titles. No estate, legal or equitable, in registered land, shall pass by a mere assignment or delivery of a duplicate certificate of title or other instrument[.]

OHIO REV. CODE § 5309.92 (Anderson 1999). This section clearly provides that no legal or equitable interest in registered land passes unless and until it has been noted on the certificate of title. Because the mortgage was not noted, Fifth Third did not acquire any interest in the Debtor's registered parcel by virtue of its mortgage.

Without addressing § 5309.92, Fifth Third argues that it obtained an interest in the registered property under a different section, Ohio Revised Code § 5309.77, titled "Effect of instruments dealing with registered land", which states:

> A . . . mortgage . . . or other instrument purporting to convey, transfer, mortgage, lease, charge, or otherwise deal with registered land, or any interest therein . . . shall take effect only as a contract between the parties thereto and as authority to the county recorder to register the . . . mortgage . . . upon compliance with sections 5309.02 to 5310.21, inclusive, of the Revised Code.

OHIO REV. CODE § 5309.77 (Anderson 1999). This section is entirely consistent with § 5309.92 in that the mortgage only takes effect as a contract between the parties until it is entered on the certificate of title, at which point it creates an interest in the property itself. As a result, Fifth Third may have acquired contract rights against the Debtor based on its mortgage under § 5309.92, but that section did not create a legal or equitable interest in the registered parcel.

Fifth Third also argues that it has an equitable interest in the land based on equitable estoppel. This doctrine is used "to prevent actual or constructive fraud and to promote the ends of justice. It is available only in defense of a legal or equitable right or

9

claim made in good faith and should not be used to uphold crime, fraud, or injustice." *Ohio State Bd. of Pharmacy v. Frantz*, 555 N.E.2d 630, 633 (Ohio 1990). "Equitable estoppel precludes a party from asserting certain facts where the party, by his conduct, has induced another to change his position in good-faith reliance upon that conduct." *Helman v. EPL Prolong, Inc.*, 743 N.E.2d 484, 495 (Ohio Ct. App. 2000).

Fifth Third relies on two Ohio Supreme Court cases, both of which are factually and legally distinguishable: *Amrich v. Boyle*, 25 N.E.2d 850 (Ohio 1940) and *Shaker Corlett Land Co. v. City of Cleveland*, 41 N.E.2d 243 (Ohio 1942). In these cases, registered land owners sought to avoid tax liens for land improvements because the taxing authority failed to comply with the then-existing law, which required assessments to be noted on the certificate of title before the land was liable for the assessment. In *Amrich*, the court held that an owner of registered land who had actually petitioned for the land improvements was equitably estopped from claiming that the assessment lien was invalid. The court extended this principle in *Shaker Corlett Land Co.*, holding that a purchaser who acquired registered land with knowledge of the assessment was not a good faith purchaser and took title "subject to the equity that arises out of estoppel." *Shaker Corlett Land Co.,* 41 N.E.2d at para. 7 of the syllabus.

The issue in these two cases was not whether an interest in registered land would be created despite the statutory language, but whether estoppel applied to prevent the land owners from challenging an assessment. *Id*. at 246 ("It thus appears that the right to subject the registered lands to payment of the assessments, if such right there is, arises not out of assessment liens, for none ever existed, but out of an estoppel[.]"). Equitable estoppel is used as a means to bar a party from asserting a legal position; the potential availability of equitable estoppel as a defense does not create an interest in registered land in derogation of § 5309.92.

Alternatively and additionally, even if the doctrine did apply to give Fifth Third a property interest, the result is the same. The Trustee, as a bona fide purchaser of the property without notice of the mortgage, is still entitled to avoid any such interest. *See Simon v. Chase Manhattan Bank (In re Zaptocky),* 232 B.R. 76, 83-84 (B.A.P. 6th Cir. 1999), *aff'd* 250 F.3d 1020, 1027-1028 (6th Cir. 2001). Similarly, Huntington and Godar

hold their perfected security interests ahead of Fifth Third because Fifth Third has not cited anything in the record showing that either party induced Fifth Third to change its position in good faith reliance on their actions, such that equity should step in to prevent fraud and promote justice.

For these reasons, we conclude that Fifth Third did not acquire an interest in the registered parcel by virtue of its mortgage and that even if it did, the bankruptcy court correctly found that Fifth Third does not hold a secured position ahead of the other parties.

### C. Equitable Subrogation and Bankruptcy Code § 550(e)

Fifth Third argues alternatively that it is entitled to a first lien against the property based on equitable subrogation (for its claim against Huntington and Godar) and Bankruptcy Code § 550(e) (for its claim against the Trustee).  The claims are based on the fact that the Debtor used some of the Fifth Third loan proceeds to pay off prior mortgages held by non-parties.

### 1. Equitable subrogation

Equitable (or legal) subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." *Fed. Union Life Ins. Co. v. Deitsch*, 189 N.E. 440, 442-43 (Ohio 1934).  The availability of equitable subrogation depends upon the facts and circumstances of each particular case. *State of Ohio v. Jones*, 399 N.E.2d 1215, 1217-1218 (Ohio 1980).  "In order to entitle one to subrogation, [a party's] equity must be strong and [its] case clear." *Id.* at 1218.  In the *Jones* case, the mortgagee, who controlled the recording process, failed to protect its interest by promptly recording a signed mortgage. Undaunted, the mortagee argued that its mortgage should take priority over a judgment lien that was filed in the interval between the mortgage signing and its recording.  The court refused to apply equitable subrogation to reach that result, stating that the mortgagee's "own actions led to its dilemma of not obtaining the best priority lien." *Id.*

11

Fifth Third's situation is comparable to that of the mortgagee in *Jones.* Fifth Third could have obtained a first mortgage position in the registered property by timely noting its mortgage on the certificate of title. Fifth Third does not point to anything in the trial record that explains its failure to do so or shows that Huntington and Godar, who were unconnected to the Fifth Third transaction, were unjustly enriched by it. Under these facts, Fifth Third is not entitled to have its interest be equitably subrogated to those of Huntington and Godar.

## 2. Bankruptcy Code § 550(e)

Finally, Fifth Third argues that it is entitled to a lien under Bankruptcy Code § 550(e). 11 U.S.C. § 550(e). We affirm the bankruptcy court on the basis that § 550 does not apply in this matter. First, § 550 only comes into play if the Trustee avoids a transfer. As held above, the unregistered mortgage did not give Fifth Third an interest in the registered property that had to be avoided. Second, even if § 544 did apply, this argument is foreclosed by the BAP's decision in *Suhar v. Burns (In re Burns)*, 269 B.R. 20 (B.A.P. 6th Cir. 2001). Under *Burns,* § 544 avoidance of a mortgage is a complete remedy and it is not necessary for the Trustee to take the additional step of recovering the mortgagee's interest in the property under § 550. The defense set out in § 550(e) would not, therefore, be available to Fifth Third in any event.

## V. CONCLUSION

For the reasons stated, the bankruptcy court decision is **AFFIRMED**.