In re Kevin Richard GOHEEN,
Debtors.

Margaret A. Burks, Trustee, Plaintiff

v.

Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2006–11, Asset–Backed Certificate Series 2006–11, Defendant.

Bankruptcy No. 10–17685.
Adversary No. 11–1015.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

March 1, 2012.

**ORDER: (A) GRANTING TRUSTEE'S MOTION FOR SUMMARY JUDGMENT; AND, (B) DENYING DEUTSCHE BANK'S CROSS–MOTION FOR SUMMARY JUDGMENT**

BETH A. BUCHANAN, Bankruptcy Judge.

The chapter 13 trustee seeks to avoid a first mortgage noted on the registered land certificate of title for the debtor's residence on the grounds that the mortgage, as filed, was not properly executed in that it did not contain a notary clause certifying the debtor's acknowledgment of his signature on the mortgage as required by Ohio law. The first mortgage holder alleges that this Court necessarily has already determined that the first mortgage is a valid, existing, and enforceable lien based on this Court's entry of order granting an unopposed motion to avoid a second lien against the debtor's residence as not attaching to equity after consideration of the value of the property and the amount of the first mortgage. As to the merits of the chapter 13 trustee's underlying action, the first mortgage holder asserts that the notation of the mortgage on the registered land certificate of title conclusively establishes that the mortgage is properly perfected and enforceable. Alternatively, the first mortgage holder maintains there is genuine issue of material fact as to whether the Mortgage as presented to the county recorder was a properly executed and valid mortgage.

This Court finds that it may consider the question of the validity of the first mortgage on the merits notwithstanding the entry of the order avoiding the second mortgage. As to the merits of the chapter 13 trustee's underlying action, this Court finds that because the first mortgage, as

Nicholas A. Zingarelli, Zingarelli Law Office, LLC, Cincinnati, OH, for Plaintiff.

Andrew Paul George, Lebanon, OH, Benjamin M. Rodriguez, Flagel & Papakirk LLC, Cincinnati, OH, for Defendant.

filed, was not properly executed, the county recorder was not entitled to note the mortgage on the registered land certificate of title. Consequently, the notation of the mortgage on the registered land certificate of title is ineffective and does not serve to perfect a lien against the debtor's residence or serve as notice of such lien. Therefore, the chapter 13 trustee, as a hypothetical lien creditor/bona fide purchaser, is entitled to avoid the first mortgage pursuant to 11 U.S.C. § 544(a).

## I. *Background*

This matter is before this Court on Plaintiff Margaret A. Burks, Trustee's (the *"Trustee"*) *Motion for Summary Judgment* [Docket Number 17] (the *"Motion for Summary Judgment"*), Defendant Deutsche Bank National Trust Company, as Trustee for GSAA Home Equity Trust 2006–11 Asset–Backed Certificate Series 2006–11's (*"Deutsche Bank"*) *Combined Motion for Summary Judgment and Response* [Docket Number 18] (the *"Cross–Motion for Summary Judgment"*), the Trustee's *Response* [Docket Number 19] (the *"Response"*), and Deutsche Bank's *Reply* [Docket Number 20] (the *"Reply"*).

On April 21, 2006, Debtor Kevin Richard Goheen (the *"Debtor"*) granted a mortgage (the *"Mortgage"*) on the property located at 8334 Mayfair Street, Cincinnati, Ohio (the *"Property"*) to Deutsche Bank. The Property is registered land. The Mortgage was filed with the Hamilton County, Ohio Recorder, however, the last several pages of the Mortgage—including the page with the notary acknowledgment clause, the Fixed/Adjustable Rate Rider and Exhibit "A" containing the legal de-

scription of the Property—were not part of the filed version of the Mortgage. Information regarding the Mortgage is noted on the registered land certificate of title for the Property (the *"Certificate of Title"*).

The Debtor filed his chapter 13 petition on September 20, 2010. The Debtor's first proposed plan indicated that the Trustee would initiate an adversary proceeding to avoid Deutsche Bank's Mortgage on the Property. Deutsche Bank filed an objection to confirmation, asserting that its Mortgage was valid.

On October 25, 2010, the Debtor amended his proposed plan to add a provision that the Debtor would be filing a motion to avoid an allegedly wholly unsecured second mortgage (the *"Second Mortgage"*) on the Property held by BAC Home Loan Servicing, LP[1] (the *"Second Mortgagee"*) under 11 U.S.C. § 506. On October 28, 2010, the Debtor filed the anticipated *Motion to Valuate and Void Lien of BAC Home Loans as Second Mortgage* (the *"Avoidance Motion"*). The Avoidance Motion, which was unopposed, was routinely granted on November 30, 2010 (the *"Avoidance Order"*).

On December 15, 2010, the Debtor, Deutsche Bank and the Trustee entered into an agreed order (the *"Agreed Order"*), which resolved Deutsche Bank's objection to confirmation of the Debtor's plan by requiring the Trustee to file an adversary proceeding within sixty days of confirmation to address the validity of Deutsche Bank's Mortgage. The Debtor's plan was confirmed on December 17, 2010. The Trustee's complaint was filed on February 1, 2011.

---

1. The proofs of claim filed in this case for the first and second mortgages both reflect "BAC Home Loan Servicing, LP" as the creditor. *See* Proof of Claim Numbers 1 and 2. It would appear, however, from the proofs of claim and the separate notices of appearance of counsel filed in the main bankruptcy case that the first and second mortgage holders are separately represented. *Id.; see also,* Docket Numbers 13 and 14.

## II. *Jurisdiction*

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the general order of reference entered in this district. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## III. *Legal Analysis*

### A. *Summary Judgment Standard*

The standard for summary judgment is set forth in Rule 56(a) of the Federal Rules of Civil Procedure (the *"Civil Rules"*), made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Civil Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, this Court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 511 (6th Cir.2003).

The standards for evaluating motions for summary judgment do not change where the parties present cross-motions for summary judgment. *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citations omitted).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As such, the summary judgment process should not be regarded "as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Id.* at 321, 106 S.Ct. 2548.

### B. *Effect of Prior Decision by this Court Involving the Motion to Avoid a Second Mortgage on the Property*

■ Deutsche Bank contends that because this Court granted the Avoidance Motion determining that there was no equity in the Property to secure the Second Mortgage after consideration of Deutsche Bank's Mortgage, this Court must necessarily find as a matter of fact and law that Deutsche Bank's Mortgage is a valid, existing, and enforceable lien on the Property. In support of its contention, Deutsche Bank references the law of the case doctrine, collateral estoppel, res judicata, claim preclusion, and equitable estoppel. For the reasons below, this Court disagrees.

It was clear to all parties from the Debtor's plan and amended plan that a challenge to Deutsche Bank's Mortgage was going to be made via an adversary proceeding to be filed by the Trustee and that

a challenge to the Second Mortgage was going to be made via a motion to be filed by the Debtor. The fact that the Avoidance Motion was decided first should not work to the advantage or disadvantage of any of the parties to this adversary proceeding. Deutsche Bank recognizes as much in the Agreed Order by acknowledging that "confirmation of the plan shall not serve as res judicata as to any declaration regarding the status of [Deutsche Bank's] first mortgage debt." Similarly, any ruling on the Avoidance Motion, which was contemplated by the plan, should not serve as res judicata as to any declaration regarding the status of Deutsche Bank's Mortgage.

This Court recognizes the realities of many chapter 13 cases where several interrelated issues may often be advancing on different procedural paths. There may be objections to confirmation, motions to avoid liens, objections to claims, and adversary proceedings. As a general principle, this Court disfavors actions that obfuscate—either directly or indirectly—the purpose or the intended consequences of such actions. The Avoidance Order was entered well before confirmation of the Debtor's amended plan. As such, Deutsche Bank could have stood on its objection to confirmation and asserted the very same law of the case doctrine, collateral estoppel, res judicata, claim preclusion, and equitable estoppel arguments at the confirmation hearing as it is now asserting as a defense in this adversary proceeding. Instead, Deutsche Bank chose to enter into the Agreed Order and proceed with this adversary proceeding.[2]

Nor does this Court believe that Deutsche Bank's position in this regard comports with the express language or the spirit of the Agreed Order. The Agreed Order provides in relevant part:

> *The Debtor is alleging that a defect in the recorded mortgage renders unsecured the debt owed to [Deutsche Bank] as the owner of the first mortgage on the Debtor's residence.* The mortgage at issue relates to a debt in the principal amount of $90,400.00. The mortgage document at issue is that recorded with the Hamilton County recorder on May 23, 2006, at document number 06–0079355. *The parties agree that such a determination is properly*

---

**2.** Deutsche Bank argues that it is the Trustee, acting in concert with the Debtor, who is acting unfairly by seeking to avoid the Second Mortgage based on lack of equity in the Property after consideration of Deutsche Bank's Mortgage and then separately seeking to avoid Deutsche Bank's Mortgage. While under the facts of this case it may have been prudent to have the avoidance of both mortgages determined together in one adversary proceeding rather than through the bifurcated contested matter/adversary proceeding process chosen by the Debtor and the Trustee, this Court does not find that either the Debtor or the Trustee were attempting to "backdoor" any parties in interest by doing so. *See* Cross–Motion for Summary Judgment at p. 9. First, the Debtor's intended course of action was fully disclosed to all parties in interest, including Deutsche Bank and the Second Mortgagee. Therefore, there was no attempt to conceal or mislead any party as to the Debtor's proposed course of action for addressing the mortgage liens against the Property and anticipated treatment of such claims.

Second, it was the Second Mortgagee's mortgage interest—and not Deutsche Bank's Mortgage interest—that was negatively impacted by the Avoidance Motion and entry of the Avoidance Order. The Second Mortgagee had ample opportunity to object to both the Avoidance Motion and confirmation of the Debtor's amended plan on the grounds that there may be equity in the Property that attaches to the Second Mortgage if Deutsche Bank's Mortgage is avoided but the Second Mortgagee elected not to do so. Accordingly, no inequities befell Deutsche Bank as a result of the "two-step process" employed by the Trustee and the Debtor in avoiding the mortgages against the Property.

*the subject of an adversary complaint.* The parties agree for the Plan to be confirmed as filed, but without prejudice to [Deutsche Bank's] right to make any and all defenses to the avoidance of the first mortgage in the adversary proceeding. Confirmation of the plan shall not serve as res judicata as to any declaration regarding the status of [Deutsche Bank's] first mortgage debt. Trustee shall file the adversary proceeding within 60 days of confirmation. Counsel for [Deutsche Bank] agrees to accept service of the adversary complaint in this case on behalf of [Deutsche Bank]. The parties acknowledge that there will be no disbursements on the claim or on any post-petition monthly payments until the status of the claim is determined in the adversary proceeding.

(emphasis added).

The Agreed Order expressly provides that the determination of the validity of Deutsche Bank's Mortgage will be made in the adversary proceeding notwithstanding the fact that the Avoidance Order had already been entered avoiding the Second Mortgage. This Court finds it disingenuous that Deutsche Bank now argues that the validity of its Mortgage has been decided when Deutsche Bank specifically agreed otherwise.

The sequence of events leading up to entry of the Agreed Order and confirmation of the Debtor's amended plan likewise supports the conclusion that it was the parties' intent and agreement to determine the validity of Deutsche Bank's Mortgage based on the merits notwithstanding entry of the Avoidance Order. The Avoidance Order was signed on November 29, 2010. The Agreed Order was signed more than two weeks later on December 15, 2010

followed shortly thereafter by confirmation of the Debtor's amended plan on December 17, 2010. All parties were aware that the matter of the Avoidance Motion had been decided and the Avoidance Order had been entered. There would be no point to entering into the Agreed Order if Deutsche Bank believed that the issue of the validity of Deutsche Bank's Mortgage had already been determined by the Avoidance Order, which belies Deutsche Bank's assertion in its Cross–Motion for Summary Judgment that Deutsche Bank somehow relied to its detriment on the Avoidance Order. Indeed, it would be a waste of the parties' resources—as well as the resources of this Court—to go forward with an adversary proceeding if Deutsche Bank thought that the validity of its Mortgage could not be called into question based on the entry of the Avoidance Order. Accordingly, this Court interprets the Agreed Order as the parties' consent to determine the validity of Deutsche Bank's Mortgage on the merits notwithstanding the entry of the Avoidance Order.[3]

## C. *Discussion of the Merits of the Trustee's Avoidance Claim*

The Trustee contends that the Mortgage is invalid because the Mortgage, as filed, does not include a notary clause certifying the Debtor's acknowledgment of the Debtor's signature of the Mortgage as required by Ohio Revised Code ("*O.R.C.*") § 5301.01. Specifically, the Trustee asserts that the Mortgage is deficient and unenforceable against the Trustee, as a hypothetical bona fide purchaser of real property/judicial lien holder pursuant to Section

---

**3.** This Court expresses no opinion as to the validity of Deutsche Bank's law of the case doctrine, collateral estoppel, res judicata, claim preclusion, and equitable estoppel arguments had the parties not entered into the Agreed Order.

544(a) of the Bankruptcy Code,[4] because the Mortgage, as filed: (1) does not provide notice of (a) the lien and (b) the identity of the grantor providing the acknowledgement; and (2) is not properly perfected.

Deutsche Bank counters that, because the Property is registered land, the notation of the Mortgage by the county recorder on the Certificate of Title conclusively establishes that the Mortgage is properly perfected and enforceable. Accordingly, Deutsche Bank asserts that the Mortgage is a valid and existing first lien on the Property, which provides the Trustee with constructive notice of the lien such that Deutsche Bank is entitled to judgment as a matter of law in its favor. Alternatively, Deutsche Bank contends that there is a genuine issue of material fact as to whether the Mortgage as presented to the county recorder was a properly executed and valid mortgage. In support of this contention, Deutsche Bank filed as an exhibit to its Cross–Motion for Summary Judgment what Deutsche Bank purports to be a fully executed and acknowledged copy of the Mortgage accompanied by the affidavit of Michael C. Fletcher, Vice–President, underwriting counsel and custodian of the records for Lawyer's Title of Cincinnati, Inc., attesting that the exhibit was a true copy of the mortgage delivered to the Hamilton County, Ohio Recorder's Office.

### 1. *Traditional Recording System vs. Land Registration System*

In Ohio, there are two systems for documenting interests in real property—the traditional recording system and the land registration or Torrens system. *See Bavely v. Huntington Nat'l Bank (In re Cowan)*, 273 B.R. 98, 102 (6th Cir. BAP 2002); *aff'd, Bavely v. Fifth Third Mortgage Co. (In re Cowan)*, 70 Fed.Appx. 797 (6th Cir.2003). To put the arguments of the parties in proper context, it is important to understand the fundamental differences between these two systems.

Under the traditional recording system, the creation and perfection of interests in real property are governed by O.R.C. § 5301 *et seq.* The focus of the traditional recording system is the record itself. Under the traditional recording system, a properly executed and otherwise valid mortgage once recorded is perfected and serves as constructive notice to third parties of an encumbrance against the property. *See generally, In re Cowan*, 273 B.R. at 102 ("If land is governed by the traditional system, a properly executed mortgage must be filed with the appropriate county recorder's office in order to create a perfected interest in the property. *See* OHIO REV. CODE §§ 5301.23 and 5301.25").

The Ohio land registration or Torrens system, O.R.C. §§ 5309 and 5310 *et seq.* (the *"Land Registration System"*), on the other hand, takes a different approach as it relates to notice and perfection of interests in real property. Under the Land Registration System, the concepts of notice and perfection are accomplished through the notation of an encumbrance or interest against real property by the county recorder on the registered land certificate of title. Thus, the basic distinction between the two systems is that under the traditional recording system the evidence of title or matters affecting title to real property is recorded versus the Land Registration System under which evidence of such matters is reflected on the register.

---

**4.** References to the *"Bankruptcy Code"* are to Title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8.

*See e.g.,* 1 Oh. Jur. Abstracts and Land Titles § 7 (2011).

 The statutory language underlying each of the two systems as relates to instruments encumbering lands illustrates this distinction. The statutory framework for the traditional recording system speaks to "recording" such instruments in the office of the county recorder in which the property is situated. *See* O.R.C. § 5301.23(A) ("All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated ..."); O.R.C. § 5301.25(A) ("All deeds, land contracts ... and instruments of writing properly executed for the conveyance or encumbrance of lands ... shall be recorded in the office of the county recorder of the county in which the premises are situated."). Whereas, the statutory structure for the Land Registration System refers to "filing" instruments encumbering land. *See* O.R.C. § 5309.48 ("When a mortgage, encumbrance or other instrument intended to create a lien upon or charge against registered land ... is *filed* in the county recorder's office ..." (emphasis added)). There is a well-accepted distinction between the terms "filing" and "recording." *Ostrander v. Brown (In re Housey),* 409 B.R. 611, 625 (Bankr.D.Mass.2009).

> According to Black's Law Dictionary ("Black's"), to *file* means: "To *deliver* a legal document to the court clerk or record custodian *for placement into the official record.*" Black's Law Dictionary 660 (8th ed. 2004) (emphasis added). Although the verb "record" is not defined, "recordation" is, and consists of the "act or process of *recording* an instrument ... *in a public registry.*" *Id.* at 1301 (emphasis added). That is, *recording* refers to the entry, indexing, or placement of information onto the official record, while *filing* refers to the

*delivery* of the document to an official responsible for its recording.

*Id.*

 In contrast to the traditional recording system where the act of *recording* an otherwise valid mortgage serves as both notice and perfection of the mortgage, the act of *filing* a mortgage in the county real estate records in and of itself has no effect on notice or perfection under the Land Registration System. *Compare* O.R.C. § 5301.23(A) ("All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and *shall take effect at the time they are delivered to the recorder for record.*") and O.R.C. § 5301.25(A) ("*Until so recorded or filed for record,* [such instruments conveying or encumbering land] are fraudulent insofar as they relate to a subsequent bona fide purchaser ..."), *with* O.R.C. § 5309.47 ("Every mortgage deed and instrument of encumbrance ... *when registered* shall operate as a lien or charge upon and bind the land covered thereby ...") and O.R.C. § 5309.38 (providing in relevant part that voluntary instruments relating to registered land are regarded as registered and become effective for the purposes intended from the time the instrument is *filed and noted by the county recorder on the entry book and registered certificate of title*) (emphasis added). Rather, it is only when the mortgage is noted on the registered land certificate of title by the county recorder that the security interest is perfected and binding on subsequent purchasers (including bona fide purchasers) and lienholders of registered land. *See* O.R.C. § 5309.47; *see also, Kincaid. v. Yount,* 9 Ohio App.3d 145, 459 N.E.2d 235 (Ohio Ct.App.1983); *In re Cowan,* 273 B.R. at 102–04.

## 2. *Effect of Notation of the Mortgage on the Certificate of Title and Means of Challenging Validity and Enforceability of the Mortgage*

Deutsche Bank argues that the Trustee had constructive notice of the Mortgage as a matter of law by virtue of its notation on the Certificate of Title and, therefore, the Mortgage cannot be avoided by the Trustee as a hypothetical bona fide purchaser or lienholder. The essence of Deutsche Bank's position is that a notation of an encumbrance on a registered land certificate of title is irrefutable proof of an encumbrance against the subject property as pertains to subsequent bona fide purchasers or lienholders. Deutsche Bank's argument in this regard is unavailing.

 Deutsche Bank correctly observes that the Land Registration System is intended to provide a conclusive method of determining title and matters affecting title. While Ohio courts may strive to realize this objective "so far as it is possible"[5] and "with an absolute minimum of exceptions,"[6] that is not to say that liens or other interests in registered land noted on or absent from the certificate of title may not be the subject of challenge. Indeed, Ohio courts have found exceptions to the general principle that the certificate of title for registered land is the final word on matters affecting title. *See, e.g., Shaker Corlett Land Co. v. City of Cleveland,* 139 Ohio St. 536, 41 N.E.2d 243 (1942) (holding that a subsequent purchaser takes registered land subject to an encumbrance not reflected on the certificate of title

where purchaser received title without good faith); *Taylor Bros., LLC v. Boyce,* 190 Ohio App.3d 189, 941 N.E.2d 114 (Ohio Ct.App.2010) (holding that the trial court erred in refusing to recognize an easement over a parcel of registered land granted years prior to the conveyance of the land to defendant—even though the county recorder failed to note the easement on the certificate of title—based on actual knowledge of the easement and lack of good faith on the part of the defendant).

Moreover, the Land Registration System provides a statutory mechanism for contesting matters involving certificates of title against registered land. For example, a county recorder or other person in interest that has questions or disagreements regarding instruments presented for registration, may refer the matter to the Ohio court of common pleas for a decision. *See* Ohio Rev.Code Ann. § 5309.43 (2011). Persons aggrieved by a county recorder's actions similarly may appeal a county recorder's decision in matters relating to registered land to the Ohio court of common pleas. *See* Ohio Rev. Code Ann. § 5309.83 (2011). Further, except as otherwise provided by the Land Registration System, parties may appeal decisions of the Ohio court of common pleas to the Ohio court of appeals. *See* Ohio Rev.Code Ann. § 5309.84 (2011); *see also, State ex rel. Guttman v. Held,* 50 Ohio St.2d 161, 4 Ohio Op.3d 351, 363 N.E.2d 741 (1977).

---

**5.** *Curry v. Lybarger,* 133 Ohio St. 55, 11 N.E.2d 873 (Ohio 1937) ("One of the primary and fundamental purposes of the registration of land under the Torrens system is to secure to the owner an absolute, indefeasible title, free from all incumbrances and claims whatsoever, except those mentioned in the certificate of title; and, *so far as it is possible,* to make the certificate issued to the owner by

the court, absolute proof of such title.") (citations omitted; emphasis added).

**6.** *Kincaid v. Yount,* 459 N.E.2d at 238 ("the intent of the Ohio [land registration] law is to make the register of titles the final proof of all 'estates, encumbrances, and rights' *with an absolute minimum of exceptions* ") (emphasis added).

Deutsche Bank impliedly acknowledges that the notation of an encumbrance on a registered land certificate of title may in fact be contested when it argues that the Trustee should be precluded from contesting the county recorder's notation of the Mortgage on the Certificate of Title in this adversary proceeding because the Trustee failed to avail herself of the foregoing state law procedures for challenging matters relating to a certificate of title. Even though the procedures set forth in O.R.C. §§ 5309.43 and 5309.83 represent two alternatives by which matters relating to registration may be brought before a judicial tribunal, failure to afford oneself of these procedures does not preclude a subsequent civil action on such account. *See Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 805 (6th Cir. BAP 2007) (holding that even though the debtors did not follow the procedures set forth by O.R.C. §§ 5309.43 and 5309.83 to challenge the extent of a mortgage reflected on the certificate of title, the chapter 7 trustee was not precluded from doing so); *Pa. R.R. Co. v. Kearns*, 71 Ohio App. 209, 212–13, 48 N.E.2d 1012 (Ohio Ct.App. 1943) (explaining that a party may assert an interest relating to registered land at any subsequent time by civil action pursuant to section 8572–87, General Code (now O.R.C. § 5309.91[7])).

Moreover, the Trustee need not seek a determination from the state court regarding the efficacy of the Mortgage as this Court may properly adjudicate the validity of liens in bankruptcy proceedings. *See In re Morgeson*, 371 B.R. at 806 (citing *Burks v. ABN AMRO Mortg. Group, Inc. (In re Price)*, 365 B.R. 794, 796 (Bankr. S.D.Ohio 2007)). Accordingly, neither the notation of the Mortgage on the Certificate of Title nor the fact that the Trustee did not pursue this action in the Ohio court of common pleas precludes the Trustee from challenging the validity and enforceability of the Mortgage in this adversary proceeding.

### 3. *Perfection of the Mortgage*

The Trustee contends that the Mortgage is deficient and unenforceable because the Mortgage, as filed, is improperly executed because it does not contain a notary acknowledgement clause and, therefore, is not properly perfected. Consequently, the Trustee maintains that the Mortgage fails to provide notice to bona fide purchasers/subsequent lienholders of the encumbrance against the Property. Deutsche Bank counters that the Mortgage complies with and is properly perfected based on the particular requirements of the Land Registration System.

Unlike the traditional recording system, where a county recorder has the discretion to evaluate a mortgage presented for recording against unregistered land before recording it but is not obligated to do so,[8] a county recorder presented with a mortgage against registered land must as-

---

7. Section 5309.91 of the Ohio Revised Code provides that "[a]ll charges upon registered land, or any interest in such land may be enforced as provided by law, except as provided by sections 5309.02 to 5310.21, inclusive of the Revised Code." O.R.C. § 5309.91.

8. *See*, O.R.C. § 317.13(B), which provides:
The county recorder may refuse to record an instrument of writing presented to the recorder for recording if the instrument is not required or authorized by the Revised Code to be recorded or the recorder has reasonable cause to believe the instrument is materially false or fraudulent. *This division does not create a duty upon a recorder to inspect, evaluate, or investigate an instrument of writing that is presented for recording.*
Ohio Rev.Code Ann. § 317.13(B) (2011) (emphasis added).

sess whether the person intending to create the lien against registered land has the right to do so and whether the person in whose favor the lien is created is entitled to have such lien noted on the register before the county recorder is authorized to make such notation. *See* O.R.C. § 5309.48. To be entitled to create a mortgage lien against registered land, the mortgagor must execute a mortgage deed, which instrument must contain a pertinent description of the land and an accurate statement of the interest intended to be mortgaged. *See* O.R.C. § 5309.47. Once registered, the mortgage becomes a lien against the property. *Id.*

While there is no express provision under the Land Registration System setting forth the execution requirements for a mortgage against registered land, O.R.C. § 5301.01—applicable to unregistered land—does provide such requirements. Ohio Revised Code § 5301.01 specifies that a mortgage is properly executed if: (1) the mortgage is signed by the mortgagor; (2) the signing of the mortgage is acknowledged before a notary public; (3) the notary public certifies the acknowledgment; and (4) the notary public subscribes the notary public's name to the certificate of acknowledgment. *See* Ohio Rev.Code Ann. § 5301.01(A) (2011); *see also, Drown v. Countrywide Home Loans, Inc. (In re Peed),* 403 B.R. 525, 530 (Bankr.S.D.Ohio 2009).

The Land Registration System expressly provides that registered land remains subject to the same burdens and incidents that attach by law to unregistered land, except as otherwise provided under the Land Registration System. *See* Ohio Rev. Code Ann. § 5309.85 (2011). Indeed, Ohio courts have interpreted the Land Registration System as placing additional requirements upon registered land to the extent that such requirements are not in-

consistent with the express provisions of the Land Registration System. *See Curry v. Lybarger,* 133 Ohio St. 55, 59, 11 N.E.2d 873, 875 (1937) ("Additional requirements are prescribed by the provisions of the Torrens Act and made prerequisite to a valid imposition of [a lien for water and sewer improvements] upon registered land."). Deutsche Bank correctly acknowledges this in its Reply. *See* Reply at p. 3.

 The rationale underlying the acknowledgment requirements for mortgages against unregistered land "is to ensure that the person signing the mortgage is indeed the person to whom the mortgage obligation runs." *Burks v. ABN AMRO Mortg. Group, Inc. (In re Price),* 365 B.R. 794, 795 (Bankr.S.D.Ohio 2007). This rationale is equally applicable to registered land. *Id.* Courts have a "duty to construe statutes and parts thereof that the same may be reconciled and held harmonious, if this can be done and their intent and purpose be maintained." *Gough Lumber Co. v. Crawford,* 124 Ohio St. 46, 176 N.E. 677 (1931) (reconciling the requirements of Ohio's mechanic's lien statutes with Ohio's land registration statutes). Therefore, the execution requirements for mortgages against unregistered land are equally applicable to registered land. *See In re Price,* 365 B.R. at 795 (holding that a mortgage on registered land must also comply with the acknowledgment requirements of O.R.C. § 5301.01); *Weller v. Shafer,* 1932 WL 2499, 1932 Ohio Misc. LEXIS 1425, 29 Ohio N.P. (n.s.) 399 (Ohio Ct. Common Pleas 1932) (applying execution requirements of Ohio General Code § 8510 (now O.R.C. § 5301.01) to mortgage against registered land).

There is no question that the Mortgage, as filed, did not contain a notary clause certifying the Debtor's acknowledgment of the Debtor's signature of the Mortgage as

required by O.R.C. § 5301.01.[9] Accordingly, the filed Mortgage clearly is not executed in accordance with Ohio law.

### a. *Deutsche Bank's Claim of a Question of Fact Relating to Mortgage as Presented to County Recorder*

Deutsche Bank nonetheless argues that this Court cannot determine as a matter of law that the Mortgage is invalid because there is at least a genuine issue of material fact as to whether the Mortgage—as presented to the county recorder—contained the notary acknowledgment clause. As evidence of this assertion, Deutsche Bank provides what appears to be a fully executed and acknowledged copy of the Mortgage.

Although there is certain intrinsic appeal under the facts of this case to treat this issue as a question of fact from the perspective of giving some deference to the county recorder with regard to the county recorder's decision to note the Mortgage on the Certificate of Title, the statutory language of O.R.C. § 5309.48 considered in conjunction with overarching notions of reliability and predictability in determining parties' respective interests in real property, deter this Court from viewing this issue as anything other than a question of law. *Cf., Mortg. Elec. Registration Sys. v. Odita*, 159 Ohio App.3d 1, 9–10, 822 N.E.2d 821 (Ohio Ct.App.2004)(observing that "with property rights it is not necessarily that the outcome be the best outcome possible in each case; only that the outcome necessarily be consistent across every case so as to provide reliability and predictability").

While filing a mortgage under the Land Registration System does not have the same direct effect from a notice and perfection standpoint as does recording a mortgage under the traditional recording system, there are other important reasons that one should be able to rely on the filed version of the mortgage as being the authentic and controlling instrument as relates to the subject matter contained therein. Parties must still look to the filed mortgage itself to determine the extent of the mortgage even though the lien is noted on the certificate of title. *See In re Morgeson*, 371 B.R. at 803–04 (looking to underlying mortgage to determine whether debtor-wife pledged her one-half interest in the property or conveyed only her dower interest even though the notation on the certificate of title suggested the lien was against both debtor-husband and debtor-wife's interests).

But more importantly for purposes of this proceeding, the Land Registration System directs the county recorder to look to the *filed* instrument to determine whether the mortgagee has a right to create a lien against the registered land and, thereby, whether the county recorder is authorized to note the mortgage on the certificate of title. *See* O.R.C. § 5309.48.[10]

9. The Trustee does not raise any issues relating to the Fixed/Adjustable Rate Rider or the exhibit containing legal description of the Property, which pages also were not part of the filed Mortgage.

10. Ohio Revised Code Section 5309.48 provides in relevant part that:

When a mortgage ..., as provided in section 5309.47 of the Revised Code, *is filed* in the county recorder's office ... and it appears to the recorder that the person intending to create the lien or charge *set forth in such instrument*, has such right, and that the person in whose favor the same is sought to be created is entitled under sections 5309.02 to 5310.21, inclusive, of the Revised Code, to have such instrument entered as a memorial upon the register, the recorder shall enter upon the proper folium of the register, where such title is registered, and upon the owner's duplicate certificate of title, a memorial accurately stating the purport and nature of the lien or

Since the filed Mortgage did not contain a notary acknowledgment, the county recorder could not determine from the filed Mortgage whether "the person intending to create the lien or charge [*i.e.*, the person who signed the Mortgage] set forth in such instrument [*i.e.*, the filed Mortgage], [had] such right"[11] because the county recorder could not "ensure that the person signing the mortgage is indeed the person to whom the mortgage obligation runs"[12] without the acknowledgment and certification of the mortgagor's signature. Therefore, the county recorder was not entitled to note the Mortgage on the Certificate of Title as a matter of law. As a result, the notation of the Mortgage on the Certificate of Title is ineffective and does not serve to perfect a lien against the Property or serve as notice of such lien. The Trustee, as a hypothetical bona fide purchaser/ lien creditor, is entitled to avoid the Mortgage pursuant to Section 544(a) of the Bankruptcy Code.

This conclusion is consistent with case law considering analogous situations under the traditional recording system where an improperly executed mortgage is recorded but is treated—as a matter of law—as though it has not been recorded, rendering the mortgage both invalid and as failing to provide constructive notice of the lien such as is required to defeat the interests of bona fide purchasers or subsequent lienholders. *See, e.g., Logan v. Universal 1 Credit Union, Inc. (In re Bozman)*, 2007 WL 4246279, 2007 U.S. Dist. LEXIS 90727 (S.D.Ohio Nov. 28, 2007) (affirming decision of bankruptcy court holding that recorded mortgage with no notary certification of the acknowledgment "was flawed

for lack of substantial compliance with Ohio Rev.Code § 5301.01, had not been properly executed, was not entitled to be recorded, and therefore could indeed be avoided by Appellee as a subsequent bona fide purchaser acting for the benefit of the bankruptcy estate."); *In re Wheeler*, 2006 WL 1645214, 2006 U.S. Dist. LEXIS 38733 (S.D. Ohio June 12, 2006) (same) (relying on *Citizens Nat'l Bank v. Denison*, 165 Ohio St. 89, 133 N.E.2d 329 (Ohio 1956)); *In re Peed*, 403 B.R. at 536 (citing *Mortg. Elec. Registration Sys. v. Odita*, 159 Ohio App.3d 1, 822 N.E.2d 821 (Ohio Ct.App. 2004) ("Although a defectively executed mortgage is not entitled to record, even if it is recorded, the defective mortgage is treated as though it has not been recorded.") and *Logan v. Kingston Nat'l Bank (In re Floater Vehicle, Inc.)*, 105 B.R. 420, 421 (Bankr.S.D.Ohio 1989) (concluding that "a defectively-executed mortgage is not entitled to record and is not binding as to a trustee in bankruptcy in his capacity as a hypothetical lien creditor/bona fide purchaser")).

Even if there is a question of fact as to when and how the final pages of the Mortgage went missing, that question of fact is not material to the issue before this Court. The issue before this Court is whether the Mortgage, as filed, is valid. What happened to the Mortgage on its way to the county recorder's office and/or within the county recorder's office does not affect the outcome of this Court's decision on that issue. *See Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

Moreover, Deutsche Bank is not permitted to correct an error or omission relating

---

charge created, the date of filing the instrument, and its file number. The recorder shall note upon the *instrument filed* with him the volume and folium of the register in which the memorial is entered.

Ohio Rev.Code Ann. § 5309.48 (2011) (emphasis added).

11. Ohio Rev.Code Ann. § 5309.48 (2011).

12. *In re Price*, 365 B.R. at 795.

to the filed Mortgage or the Certificate of Title because the intervening rights of the Trustee, as a hypothetical bona fide purchaser/judicial lienholder, would be impaired by such correction. *See* O.R.C. § 5309.76(C) (precluding recorder from correcting an error or omission in any certificate of title if the "rights of bona fide purchasers or lienholders for value have intervened by which their estate or interest will be impaired by the correction"); *cf. Stubbins v. Am. Gen. Fin. Servs. (In re Easter)*, 367 B.R. 608, 615 (Bankr.S.D.Ohio 2007) (holding that the right of reformation could not be invoked to abrogate the rights of an innocent intervening third party, such as a bankruptcy trustee, with respect to a defective mortgage against unregistered land); *Helbling v. Mortg. Elec. Registration Sys., Inc. (In re Cala)*, 2008 WL 2001761 at *6–7, 2008 Bankr.LEXIS 1451 at *20–21 (Bankr. N.D.Ohio May 6, 2008) (holding that "reformation cannot be made when it would prejudice the rights of bona fide and innocent purchasers.") (internal quotes and citations omitted).

## IV. *Conclusion*

For the foregoing reasons, the Trustee's Motion for Summary Judgment is hereby GRANTED and Deutsche Bank's Cross–Motion for Summary Judgment is hereby DENIED.

IT IS SO ORDERED.